**Bobby POLK, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 982S348.**

Supreme Court of Indiana.

Aug. 27, 1984.

Arnold Krevitz, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is an appeal from convictions in Superior Court of Lake County Criminal Division, Room Four for robbery, a class B felony, Ind.Code § 35–42–5–1(2), and kidnapping, a class A felony, Ind.Code § 35–42–3–2(b). Sentences of ten years and twenty years to be served concurrently were given.

■ Appellant alleges that the verdicts of the jury were not supported by sufficient evidence that he knowingly or intentionally committed any of the statutory elements of either the crime of robbery or kidnapping. In reviewing the allegation of insufficient evidence this Court will not weigh the evidence nor resolve questions of credibility of witnesses, but will look to that evidence and the reasonable inferences therefrom which support the verdicts. *Asher v. State*, (1969) 253 Ind. 25, 244 N.E.2d 89. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which the trier of fact could reasonably infer that the appellant was guilty beyond a reasonable doubt. *Smith v. State*, (1970) 254 Ind. 401, 260 N.E.2d 558.

A fair statement of the evidence most favorable to the State reveals the following: At approximately 4:00 a.m., July 19, 1980 appellant along with Truitt, Levy and Hines arrived at a restaurant in Hammond, Indiana in a car. Appellant entered alone, walked thirty feet through the place, looked around, and retraced his steps to a counter where he sat down and ordered a hamburger deluxe to go. Truitt, Levy, and Hines then entered the place and sat some seats away from appellant at the counter. There was no exchange between appellant and the group. The group then proceeded to rob the place and the customers. A waitress collected wallets from the customers, and upon approaching appellant, he told her that he was not putting his in the sack. Levy announced in a threatening manner that appellant would have to go with him. Levy had a gun but did not point it directly at appellant. Appellant left with Levy, and outside the two were seen running toward the car. Levy did not then have the gun on appellant. Truitt took one of the customers hostage by holding a gun to his neck and forcing him out of the place to the waiting vehicle. Hines forced the manager of the store to go with him as cover until the door of the restaurant was reached. Appellant subsequently ran from the car and away from pursuing police officers following a high speed chase by police. Appellant was not armed at the restaurant and did not engage in threatening the people or gathering the money. In a statement to police following his arrest appellant admitted that he participated in planning to commit the robbery and had agreed to go along and act as a lookout.

■ Appellant alleges that evidence is insufficient to show that he had the requisite knowing or intentional state of mind during these episodes. This allegation is unsupportable as it ignores inferences

which might reasonably be made that appellant was playing the role of a customer, victim and at last a hostage to cover his true capacity as a lookout to facilitate a pre-planned armed robbery and successful escape from the scene. It ignores the inference which might reasonably be made that appellant was fully aware that guns would be used by his confederates against fellow human beings to compel them to move and conduct themselves so as to give up their money and to make escape possible. The probable and natural consequence of a preconceived plan to rob by employment of a gun is the use of the gun against others to make a successful escape. The evidence here is sufficient to warrant the verdict of the jury that appellant did have the requisite mental states required by the robbery and kidnapping charges and that he fully participated in both crimes.

 Appellant alleges that the trial court committed error in permitting the State to introduce his oral and written confessions at trial. When the admissibility of such statements is challenged, the burden is upon the State to make proof of the criteria for admissibility beyond a reasonable doubt. A confession is voluntary if it is the product of a free will and not induced by any violence, threats, promises, or other improper influence. A waiver of counsel and the privilege against self-incrimination is voluntary and knowing if it too is the product of a free will and not induced by any violence, threats, promises, or other improper influence, and is given with a sufficient awareness of the relevant circumstances and likely consequences. *Magley v. State*, (1975) 263 Ind. 618, 335 N.E.2d 811.

 The evidence discloses that appellant was arrested minutes after the crime at about 4:30 a.m. on the 19th, and was taken to the hospital for treatment of an injury to his right hand which he had suffered earlier in the day when he had been drinking and got into a fight. The hospital was too busy to treat him and he was taken on to jail. Twelve hours later he was taken from his cell to interrogation, where he was given a full oral advisement of rights. He read the written rights form, and clearly communicated that he understood what he had read and signed a written waiver of rights. At the time appellant was a married man, working in a plant. He had sufficient reading and writing skills to understand these documents. His signature on the waiver form is shaky, but legible. In fact appellant was right handed and had signed with his left hand. He did not complain about pain, fear, exhaustion or mistreatment. He was then simply asked, and admitted that he had taken part in the crime. The interrogators were busy taking statements from others and asked appellant if it would be alright with him if they waited until the following day to put the statement in writing. He agreed. He was then returned to his cell. This first interrogation lasted only a few minutes.

The second interrogation which produced the full written statement lasted no more than one hour. It took place the following morning. By that time appellant had been returned to the hospital and a cast had been placed on his hand because of a broken bone. He received rights anew and signed another written waiver again with his left hand. He had received food and drink, appeared rested, and communicated normally, although he was suffering pain in his hand. Appellant testified that he asked to make a call to his family, and was told to wait until they had finished. Appellant examined and signed the written statement. He then made a telephone call.

The proof presented affirmatively supports the conclusion beyond a reasonable doubt that appellant's choices to forego his rights and confess his crime on the occasion of both interrogations were made with a sufficient knowledge of consequences and were self-directed. There is on the one hand clear goal oriented conduct in the absence of any evidence of extended questioning, threats or intimidation, and on the other hand some pain, intoxication and anxiety due to the circumstances including the delay in moving the processes along, and a natural desire to please and acquire bene-

fits such as the telephone call. These factors do tend to show a diminished ability to understand rights and to resist the inherent pressures present in these circumstances. They tend to show that appellant's choices were influenced by his physical and emotional condition; however, we agree with the trial court that their tendency in this regard was slight. On balance the evidence supports the admissibility of these incriminating statements and they were properly admitted.

Appellant unsuccessfully sought to introduce the written statement of co-defendants, who were tried separately, through the officer to whom they had been given. There was no error in the ruling since co-defendants as declarants were not in court and available for cross-examination by the State, and the defense sought to use the statements to support the truth of the propositions that appellant had entered the restaurant to eat and the co-defendants then entered the restaurant while he was inside and commenced the robbery. Under these circumstances the statements were hearsay and inadmissible. *Patterson v. State*, (1975) 263 Ind. 55, 324 N.E.2d 482, 484; *Harvey v. State*, (1971) 256 Ind. 473, 269 N.E.2d 759.

Appellant was unsuccessful in persuading the trial judge to include the following language within an instruction regarding aiding or abetting in the commission of a felony:

"That mere companionship of an accused with the perpetrator immediately before or after a criminal episode is insufficient alone to show complicity."

The idea sought to be communicated to the jury by this language is that criminal culpability may not rest upon proof that the accused did no more than engage in a friendly association with the perpetrator of a crime immediately before or after his crime. As an abstraction the statement holds a moral, legal and even compelling interpretation. As a guide to a jury in an aiding and abetting instruction the statement is confusing and misleading in that it purports to be definitive but calls for consideration of "companionship" divorced from knowledge and conduct, a stultifying exercise, and one which would lead the jury too far from the main path which is signified by focus upon knowledge and conduct. Instructions having the propensity to seriously mislead jury consideration are properly rejected. *Davis v. State*, (1976) 265 Ind. 476, 355 N.E.2d 836.

Appellant also argues that the instruction as given was misleading wherein it employs a definition of "to aid" as "being present at the time and place, and knowingly doing some act to render aid" while also stating that "mere presence at the scene" is not sufficient to allow an inference of participation. There is nothing inconsistent or confusing about the use of these phrases.

Appellant also argues that his participation was so minimal in the entire episode that the aiding and abetting instruction was not warranted. The evidence cited above, including appellant's own statements, would be sufficient to warrant the instruction.

Appellant sought unsuccessfully to persuade the trial judge to refuse to give a standard flight instruction to the effect that evidence of flight is not evidence of guilt but was relevant as evidence of consciousness of guilt. He argues on appeal that such instructions give undue emphasis to the particular evidence, and that the evidence presented in this case was insufficient to warrant the instruction. This same argument that such instructions regarding flight are defective in that they give undue weight and emphasis to particular evidence was considered and rejected in *James v. State*, (1976) 265 Ind. 384, 354 N.E.2d 236. Furthermore, there was evidence presented in the record from which it could reasonably be inferred that appellant left the scene voluntarily with the robbers and then fled from the getaway car when it was stopped by the police. This constitutes a sufficient evidentiary basis for the instruction.

The convictions are affirmed.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.