**Michael D. PALMER, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 49S02–9012–PC–783.

Supreme Court of Indiana.

Dec. 13, 1990.

Michael D. Palmer, pro se.

Linley E. Pearson, Atty. Gen. and John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

### ON CRIMINAL PETITION TO TRANSFER

GIVAN, Justice.

This is an appeal from the denial of a petition for post-conviction relief. In an opinion published at 553 N.E.2d 1256, the Court of Appeals reversed the trial court's denial of appellant's petition for post-conviction relief. We grant transfer and set aside the opinion of the Court of Appeals.

After a trial which ended in a hung jury, appellant was retried and convicted of murder in May of 1980. That conviction was affirmed by this Court in *Palmer v. State* (1981), Ind., 425 N.E.2d 640. In March of 1984, appellant filed a petition for post-conviction relief. Following a hearing, the petition was denied in 1987. He was represented by the Indiana Public Defender. However, he brings this appeal *pro se.*

Appellant claims the post-conviction court erred in concluding that not all issues contained in his petition were proper subjects for review in a post-conviction proceeding. The record shows that separate counsel represented appellant in his trial and on his direct appeal. Thus the competency of trial counsel was fully available to appellate counsel as well as many other issues which appellant attempted to raise in his post-conviction petition. Ind.Post–Conviction Rule 1.

Because appellant also raises the competency of appellate counsel, we turn to his specific allegations of error. He claims the post-conviction court erred by not concluding that appellant had been denied a fair trial based on the violation of his constitutional right to confront Dr. Josefino Aguilar. In appellant's first trial, which ended in a hung jury, Dr. Aguilar testified concerning the autopsy which he performed on the decedent. At the second trial, Dr. Aguilar was not present. However, Dr. Benz testified to interpret Dr. Aguilar's written autopsy report. There was no defense objection to Dr. Benz's testifying.

In Dr. Aguilar's report, he referred to the term "abrasion collars" which are marks surrounding a bullet wound caused by the rotation of the bullet against flesh. These marks are used to distinguish the entrance wound from the exit wound. However, Dr. Benz did not testify as to "abrasion collars." Appellant contends that this lack of testimony on the part of Dr. Benz deprived the jury of adequate information as to the specific path each bullet took upon entering the decedent's body.

Dr. Aguilar had testified that the decedent sustained a bullet wound in the face which travelled from front to back and another bullet wound in the hip which also travelled from front to back. Appellant points out that witness William Taylor testified that as the victim lay on the ground with his upper body propped up on his right elbow looking up at appellant, the appellant fired a shot while standing over the victim. Presumably this was the shot that struck the victim in the face. Appellant argues that because the second jury was deprived of the evidence concerning the path of the bullet, they were misled into believing that Taylor's testimony was accurate.

Appellant hypothesizes that Taylor's testimony could not be accurate if Dr. Aguilar's description of the path of the bullet was correct. We cannot agree with appellant's assessment of this testimony. Tay-

lor's testimony is entirely consistent with the shot being fired point blank into appellant's upturned face. We find no merit in appellant's argument and thus see no harm in the omission of the "abrasion collars" testimony.

Appellant also claims that Dr. Benz minimized the injuries the victim sustained as the result of a bullet wound in the hip and lower abdomen, whereas Dr. Aguilar's testimony showed extensive damage to the internal organs and to the muscles in the victim's thigh. Given Dr. Aguilar's testimony, appellant contends it would have been impossible for the victim to have run as far as testimony indicated with such extensive injuries. Notwithstanding the extent of the injury, the evidence in this case is overwhelming that the victim was shot in the hip while running and that he continued to travel a short distance after being shot. We see nothing in this evidence which would prevent the jury from concluding that the victim was shot while running and that the shot was fired by appellant.

We further would point out that the circumstances of Dr. Benz's testimony concerning Dr. Aguilar's findings and the results thereof were facts well known to appellate counsel at the time of the direct appeal and could have been raised therein. A post-conviction relief hearing is not the proper forum for the adjudication of matters which could have been raised on direct appeal. P–C.R. 1.

■ Appellant claims the post-conviction court erred in failing to find that appellant had been denied a fair trial based on the violation of his constitutional right to confront Brenda Jones, who had been a State's witness at the first trial. During the second trial, the State informed the court that they had been unable to locate Jones and that with the approval of the defendant they wished to read the transcript of her testimony given at the first trial. Appellant's trial counsel specifically stated that he had no objection to the reading of that testimony.

At the post-conviction hearing, appellant's counsel produced an affidavit from Jones that she in fact was available to testify at the second trial. However, also at the post-conviction hearing, appellant's trial counsel testified that he was unable to locate Jones and determined that it was in appellant's interest to allow her earlier testimony to be read because it aided appellant in his claim of self-defense. Thus the issue was specifically waived by appellant during his second trial. *See Lee v. State* (1988), Ind., 519 N.E.2d 146.

Here again, this is an issue which was available to appellate counsel in the original appeal; thus it is not available as an issue in a post-conviction hearing. P–C.R. 1.

■ Appellant claims the post-conviction court erred by not concluding that appellant had been denied a fair trial based upon the prosecutor's failure to correct false testimony of its witness, Dr. James Benz. Appellant argues that Dr. Benz's testimony did not correctly follow the autopsy report made by Dr. Aguilar and that when the State failed to correct the discrepancy it denied appellant his constitutional right. However, Dr. Aguilar's autopsy report was entered in the second trial as State's Exhibit No. 20 without objection from appellant. After the admission of this exhibit, Dr. Benz testified that he had read the report and proceeded to draw certain conclusions therefrom. Thus any discrepancy between Dr. Aguilar's report and Dr. Benz's interpretation thereof was available to appellant's trial counsel and also was submitted to the jury for their evaluation. Appellant's presentation now is merely an attempt to have this Court reweigh that evidence. This we will not do. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670. Here again we would point out that this was a matter clearly available to the original appellate counsel and is not a proper subject for examination in a post-conviction hearing. P–C.R. 1.

■ Appellant contends the post-conviction court erred in not finding that the jury was instructed improperly as to voluntary manslaughter. During the trial, the court gave an instruction to the jury indicating

"sudden heat" was an element of voluntary manslaughter which was a pattern jury instruction taken from a book furnished to trial judges for that purpose.

The post-conviction court made the observation that both trial and appellate counsel felt the instruction was advantageous to appellant because he had invoked the defense of self-defense and that rather than being interested in an ideally correct instruction, they were interested in an instruction concerning manslaughter and the elements which would lead to such a lesser conviction. Both trial and appellate counsel felt that the appellant's interests would be served best by the giving of such an instruction and the argument to the jury which could be made based upon that instruction.

If we presume for the sake of argument that the instruction was technically incorrect, trial and appellate counsel nevertheless were correct in their evaluation that the instruction as given worked to appellant's best interest in that he argued to the jury that evidence had been presented during the trial that appellant became angry when the decedent demanded that appellant's sister-in-law accompany him to a liquor store after she said that she did not want to go with him. There also was testimony that the decedent taunted and threatened appellant and that appellant was angry and acted as if he were in a trance. Under the circumstances, we cannot say that appellant suffered any disservice by the giving of the instruction and the manner in which it was handled by his trial counsel.

Here again, this is an error readily available on the original appeal and not a proper subject for post-conviction relief. P–C.R. 1.

Appellant claims he was denied effective assistance of counsel during his trial. He claims counsel was ineffective because of his failure to object to the manslaughter instruction above discussed. We find no ineffective assistance there.

He also claims counsel was ineffective because of his failure to object to the reading of Brenda Jones' prior testimony.

Here again, counsel explained during the post-conviction hearing that he felt that Jones' testimony was beneficial to appellant in that it tended to substantiate his claim of self-defense. This Court will not speculate or attempt to second-guess trial counsel as to the most effective strategy under the circumstances. *Rozika v. State* (1988), Ind., 520 N.E.2d 1267; *See Slaton v. State* (1987), Ind., 510 N.E.2d 1343.

He also claims trial counsel erred in not objecting to the testimony of Dr. Benz. As we have stated previously in this opinion, both Dr. Aguilar's written autopsy report and Dr. Benz's testimony were before the jury for their evaluation. Trial counsel also had every opportunity to call the jury's attention to any discrepancies between the report and Dr. Benz's testimony. Appellant merely is asking this Court to reweigh and evaluate this evidence. This we will not do. *Alfaro, supra.* Even so, we find nothing in this record to justify a finding that counsel's representation in this regard was inadequate.

Appellant also contends he was denied effective assistance of counsel on appeal. He claims the various alleged errors which have been discussed previously in this opinion demonstrate that appellate counsel was ineffective for not raising those errors in the original appeal. Although we have pointed out that those errors were waived by not being raised on appeal, we also have dealt with the merits of those alleged errors and have found them to be well within the discretion of trial counsel. Therefore the raising of such issues by appellate counsel would have been to no avail. *Rozika, supra; Slaton, supra.*

Appellant also claims he was denied adequate appellate relief because the record did not substantiate the testimony of William Taylor that appellant first shot the decedent in the pelvic region while he was fleeing, then shot him in the face while he lay on the ground begging for his life. Appellant contends these facts are erroneous and not substantiated by the autopsy report and the testimony of Dr. Benz. However, we have examined this evidence

and cannot agree with appellant in his strained interpretation of the facts.

Appellant claims that statements of fact in this regard included in this Court's opinion on direct appeal were generated by counsel's failure to bring a proper and adequate record before this Court. However, we find no inadequacy in the record and no inconsistencies in the evidence presented.

The opinion of the Court of Appeals is set aside, and the trial court is affirmed.

SHEPARD, C.J., and PIVARNIK, J., concur.

DeBRULER, J., dissents with separate opinion in which DICKSON, J., concurs.

DeBRULER, Justice, dissenting.

Of the judges and lawyers who have touched this case, most find, and none deny, that the jury was presented with the evidentiary predicate for the conclusion that appellant was guilty of voluntary manslaughter and not murder. That predicate was summarized by Judge Sullivan for the Court of Appeals as follows:

> In the present case there was evidence which introduced the issue of sudden heat. Such evidence included testimony that the victim, Charles Williams, had beaten and raped Palmer's sister-in-law, had demanded that the sister-in-law accompany Williams to a liquor store although she did not wish to go, had refused to leave when asked by Palmer to do so, had taunted Palmer, and had appeared to reach for a gun.

*Palmer v. State* (1990), Ind.App., 553 N.E.2d 1256, 1261. The presence of this evidentiary predicate in a case in which the defendant is charged with murder entitles the defendant to a correct instruction on the lesser offense of voluntary manslaughter placing the burden upon the prosecution to negate the presence of sudden heat to the satisfaction of the jury beyond a reasonable doubt. *Harrington v. State* (1987), Ind., 516 N.E.2d 65. An instruction which does not place this burden on the prosecution is erroneous, detrimental to the substantial right of the defendant and, where properly objected to and such objec-

tion is accompanied by a proper instruction, is cause for a new trial on the murder charge. *Id.* Where, as here, the prosecution is relieved by an erroneous instruction of the burden to prove this negative with respect to the manslaughter charge, the option of the jury to move down the ladder of offenses by reason of a prima facie evidentiary predicate and to convict on the lesser offense of voluntary manslaughter rather than the greater offense of murder is lost. I concur with the Court of Appeals majority, that the failure of counsel to seek a correct and proper instruction on voluntary manslaughter, where a conviction of that lesser offense was actively sought in argument to the jury as an alternative to the self-defense claim, constituted ineffective representation warranting a grant of post-conviction relief.

DICKSON, J., concurs.